PARMELEE and another *v.* A. BURRITT HARDWARE Co.

(*Circuit Court, D. Connecticut.* August 13, 1885.)

PATENTS FOR INVENTIONS—INVENTION—PARMELEE FIRE-EXTINGUISHER.
> Letters patent No. 218,564, granted August 12, 1879, to Henry S. Parmelee, for an improved automatic fire-extinguisher, wherein the inventor made a sensitive extinguisher by placing the seal at the extreme outer end of the water-pipe, and so near the distributer that, when the joint of the seal was melted, the seal itself was forced into the distributer, and the water was left unobstructed, describe a patentable invention, and are valid.

2. SAME—INFRINGEMENT.
> The defendants' extinguisher is an infringement, it not being imperative that the seal should be so constructed that the water should be below the joint.

In Equity.

*Charles E. Mitchell* and *Benj. F. Thurston,* for plaintiffs.

*John K. Beach* and *John S. Beach,* for defendants.

SHIPMAN, J. This is a bill in equity to restrain the alleged infringement of letters patent No. 218,564, granted August 12, 1879, to Henry

S. Parmelee, for an improved automatic fire-extinguisher. The disclaimer, which is a part of the specification, and the two claims of the patent, clearly point out the character and extent of the invention. The specification says:

"I am aware that fire-extinguishers have been provided with seals within the body of the casing of the distributer, and in connection with a valve arranged therein, and hence I make no claim to such construction. In my improvement the seal is located on the outer end of the water-conduit, connected with the perforated distributer, whereby the seal is not only protected against accidental displacement, and also from dust and dirt from the ceiling overhead, but is exposed most prominently to the action of the heat, which has direct entrance to the seal through the perforations in the distributer."

The claims are as follows:

"(1) In an automatic fire-extinguisher, the combination, with a perforated distributer, of a seal attached to the extreme outer end of the water-conduit, connected with the perforated distributer; said seal being retained in place by metal fusible at a low temperature, substantially as set forth. (2) In an automatic fire-extinguisher, the combination, with a perforated distributer, of a seal secured by fusible solder to the extreme outer end of the water-conduit, connected with the distributer, and at a point within the body of the said perforated distributer, substantially as set forth."

The seal shown in figure 1 of the drawings and in the wooden model which is an exhibit in the case, is a flat disk or cap, the flange of which incloses the end of the water-pipe. The bottom of the cap is upon the end of the pipe, and the cap is secured by solder between the outer surface of the pipe and the inner surface of the flange. The patented device differs from the devices shown in the English patent to Lewis Roughton, of July 5, 1861, and in the United States patent to Brown & Foskett, of August 10, 1875, in the location of the seal, whereby the extinguisher is rendered more sensitive to the influence of heat and more prompt in its beneficial action. The Roughton device is complex and expensive, and has a quantity of metal near the seal which prevents prompt action of heat upon it. The Brown & Foskett seal is placed in the pipe leading to the T-shaped outlet to which the distributer is secured. The Parmelee seal, when the joint is melted, is forced into the distributer. The Brown & Foskett seal is delivered, when released, into a pipe attached to the opposite end of the T piece. The distinction between the Parmelee device and its predecessors is manifest and is patentable. The inventor made a sensitive extinguisher, by placing the seal at the extreme outer end of the water-pipe, and so near to the distributer that, when the joint of the seal was melted, the seal itself was forced into the distributer and the water was left unobstructed.

The defendant's extinguisher has, instead of a flat cap, a semi-spherical cap at the extreme end of the water-pipe, but the flanges of the cap pass into the end of the pipe, instead of passing upon the outside of the end. Quoting from the testimony of Mr. Quimby, one of the defendant's experts, his description of the seal:

"The Burritt seal is a short, hollow cylinder, having one closed hemispherical end. The exterior surface of this cylinder is secured by fusible solder to the interior of a nipple provided upon its exterior at both ends respectively with male screw-threads, the thread at one end being for engagement with the female thread-funnel within the neck of the perforated distributer, and the thread at the other end of the nipple being for effecting the connection of the nipple with the water-pipe. I understand that the special object in making the closed end of the seal in the Burritt extinguisher hemispherical is to increase the tendency of the seal to roll around the interior of the distributer after the seal has been released, and been projected into the distributer. As a consequence of this hemispherical shape of the closed end of the seal, the water contained within the conduit extends both above and below the soldered joint which is to be fused."

The defendant contends that the fact that in the Burritt device the water extends above the soldered joint of the seal, whereas the water in the Parmelee device does not surround the joint, takes the Burritt device out of the Parmelee patent; and reliance is placed upon a clause in the specification which says:

"As the seal is secured within the distributer, which is usually made of metal, the rise of the temperature in a room or compartment will raise the temperature of the metal of which the distributer is made, and thus melt or fuse the joint between the seal and the distributer more readily than if water surrounded or was above the seal."

The patentee was here referring to the advantage which his invention possessed over a previous invention which he had patented in 1874, in which the seal inclosed the distributer, and consequently the water filled the distributer and the space between it and the cap, and thus "surrounded the joint, and seriously retarded the melting of the solder;" but the patent now in suit, though a narrow one, is not to receive the extremely narrow construction which the defendant gives. According to the construction of one of its experts a flat Burritt seal would be within the patent, while a dome-shaped one would not be, and in the opinion of another expert a Parmelee flat-cap would be without the patent, if the flanges were inside instead of outside the extreme outer end of the water-pipe. The gist of the invention was the location of the seal upon the extreme outer end of the water-conduit and connected with the distributer; but it is not imperative that the seal should be so constructed that the water should be below the fusible joint.

Let there be a decree for the plaintiffs for an injunction and an accounting.